# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **JOHN GOODS** | **CIVIL ACTION NO. 08-1149** |
| **VS.** | **SECTION P** |
| | **JUDGE JAMES** |
| **SHERIFF STEVE PYLANT, ET AL.** | **MAGISTRATE JUDGE HAYES** |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

*Pro se* plaintiff John Goods, a pre-trial detainee at the Franklin Parish Detention Center (FPDC), filed the instant civil rights complaint (42 U.S.C. §1983) *in forma pauperis* on August 5, 2008. Plaintiff complained that he was wrongfully confined to the FPDC "lock-down" since July 14, 2008; he also complained about the conditions of confinement in the lock-down cell, interference with the practice of religion, and an inadequate law library. He sued Franklin Parish Sheriff Steve Pylant and FPDC's Warden, Chad Lee, and his assistant Hilton Griffen. He prayed that he be returned to general population and awarded "... all monetary relief afforded by law."

On December 16, 2008, the undersigned authored a Report recommending dismissal of plaintiff's claims as frivolous and for failing to state a claim for which relief might be granted. [rec. doc. 8] On January 20, 2009, the Court adopted the Report insofar as it recommended dismissal of the due process, conditions of confinement, practice of religion, and law library claims. However, the Court remanded the matter and directed the undersigned to prepare a Supplemental Report and Recommendation on plaintiff's claim that he was confined in administrative segregation in retaliation for pleading not guilty and/or for filing the instant civil rights complaint. [rec. docs. 9 and 10]

Thereafter, plaintiff was ordered to amend his complaint to flesh out his retaliation claims. [rec. doc. 11] On March 27, 2009, plaintiff filed an amended complaint addressing the details of his retaliation claim. [rec. doc. 12]

For the following reasons it is recommended that the remaining claim of retaliation be **DISMISSED WITH PREJUDICE** as frivolous.

*Background*

*1. Original Complaint [rec. doc. 1]*

In his original complaint, plaintiff alleged that he is being detained at the FPDC awaiting trial on unspecified charges.[1] He was so detained for the 20 months preceding July 30, 2008, the date he signed his complaint. On July 14, 2008, plaintiff was placed in FPDC's lock-down; plaintiff complained that his placement in lock-down was without reason nor supported by a write up of formal disciplinary charges. Plaintiff sought the reasons for his confinement from the Assistant Warden and the Warden to no avail. After making inquiry to Warden Lee, plaintiff was "... put on total restriction, no use of phone, no T.V., no church, no movement al all..." When his parents inquired about this circumstance, they were advised that the matter was under investigation.

On July 17, 2008, plaintiff submitted an administrative remedies procedure (ARP) grievance to the Warden inquiring about his placement in lock-down and complaining that he was not afforded due process. As of the date he filed his complaint, he had not received a reply.

---

[1] In his amended complaint plaintiff advised that he is charged with possession of a firearm by a convicted felon, armed robbery, attempted second degree murder, illegal discharge of a firearm, and assault by drive-by shooting. He also advised that his bond was set at $250,000 and that a parole revocation detainer has been lodged against him. [rec. doc. 12, p. 4]

Plaintiff submitted both formal and informal ARPs and letters but received no reply. Sometime prior to September 9, 2008, plaintiff submitted a letter to the court. He claimed that on August 7, 2008, he was released from lock down and placed in a dormitory. On some unspecified date, plaintiff was summoned to Warden Lee's office. Lee inquired about plaintiff's civil rights complaint and advised plaintiff that he had the authority to confine plaintiff in lock down for as long a period as he deemed necessary. Plaintiff was then returned to lock down without benefit of a formal write up or charges.

Eventually, after submitting additional inquiries and ARPs, plaintiff was advised that the reasons for his confinement in lock down was because he had been accused of "strong arming" inmates in the dormitory. Plaintiff disputes this allegation and contends that he has been confined in retaliation for filing suit. According to plaintiff, he has complained to ranking corrections officers who have advised him that his confinement was ordered by Warden Lee.

*2. Amended Complaints [rec. docs. 6 and 7]*

On October 15 and December 9, 2008, plaintiff filed amended complaints. In the first amended complaint [rec. doc. 6], plaintiff claimed that he was placed in lock-down on July 14, 2008. He again noted that he was released from confinement on August 7, 2008, but was returned to confinement on August 26. He was originally placed in Cell 301 but he was moved to Cell 304 on August 28; shortly thereafter, he and the other occupant of Cell 308 had an "altercation." He was then transferred to Cell 303. He claimed that other inmates were moved out at some point because of fighting.

In these amended complaints, plaintiff maintained that he was confined to lock-down because he refused to plead guilty to the criminal charges which are pending against him.

In his second amended complaint, plaintiff claimed that as of November 24, 2008, he was still confined to lock down in Cell 303 and that his continued confinement in lock down was ordered by Warden Lee.

*3. Third Amended Complaint [rec. doc. 12]*

On July 14, 2008, plaintiff was removed from Pecan Dorm and placed in holding cell #177. Plaintiff claimed that he was provided no reasons for the transfer but was told that it was ordered by Warden Lee.

On July 15, 2008, plaintiff wrote a letter to Warden Lee and placed it in the outgoing mail.[2] He was then placed on total restriction – no telephone or television privileges, no church, no movement at all. Plaintiff's parents inquired on some unspecified date and Warden Lee advised that the matter was under investigation.

On July 17, 2008, plaintiff submitted an Administrative Remedies Procedure (ARP) grievance to Warden Lee in which he claimed that his placement in lock down violated due process. Unspecified individuals, on unspecified dates, threatened plaintiff with "... confinement to the 'cold room' and with the use of mace and Taser..." Plaintiff signed his original complaint on July 30, 2008.

On August 7, 2008, plaintiff was released from Cell #177 and placed in K-Dorm.

On August 22, 2008, plaintiff spoke to Warden Lee. According to plaintiff, "Lee inquired about my civil rights complaint and advised me that he have the authority to confine me in lock down for as long a period he deemed necessary."

On August 26, 2008, plaintiff was returned to lock down. On unspecified dates he

---

[2] Plaintiff has not revealed the contents of this letter.

submitted "inquiries and ARPs" and ultimately he was advised that the reason he was placed in lock down was because he was suspected of "strong arming" inmates in the dormitory. (Plaintiff disputes this claim and contends that his confinement was in retaliation for filing suit. Plaintiff claims that other corrections officers have attempted to transfer plaintiff, but Warden Lee refused their requests.)

Plaintiff dropped his claims against Warden Griffen because his evidence against this defendant is insufficient.

Plaintiff submitted a copy of the ARP he sent to the FPDC administration which complained that officers Benson, Gimmerson, and Eubanks violated DOC rules and regulations on August 26, 2008, when they placed plaintiff in lock down without first affording plaintiff due process, thus violating plaintiff's due process rights. In support of this allegation plaintiff claimed:

> On 8-26-08 I was taken out of K Dorm to Hold Cell 301 for unsaid reason, except per order of 'Higher Rank' but no name was said by officer Benson, Gimmerson and Eubanks the officer whom I can remember then due to the hurricane I was moved to another Cell 304 with a person who take medication to function right, however I told officer Lt. Sewell he is unfit to live around, so he use it as 'State of Emergency' and that their not trying to punish me but they had room in other places then the next morning officer Sgt. Dalton noticed we was having confrontation and he removed me out and put me on the floor in Holding Cell 303 where 2 guys already occupied the cell and again Higher Rank made the call and I'm sleeping under a toilet and next to a shower. [rec. doc. 12, p. 5]

Plaintiff then claimed that he had a right to confront his accusers and to be afforded witnesses to testify on his behalf. He concluded by writing, "I feel that I'm on lock down [because] I've filed a Civil Right Complaint and this punishment is nothing but retaliation." He also accused the FPDC administration of favoritism, racism, and discrimination because other inmates who

5

caused "nothing but trouble" were allowed to remain in the general population. [rec. doc. 12, p. 6]

On September 5, 2008, Officer Johnson replied to plaintiff's ARP as follows –

You were put in the holding cell on the east side from K dorm on another shift because they said you were strong-arming some of the guys in K Dorm. The other time you were moved from one holding cell to another to make room for someone else. [*Id*.]

*Law and Analysis*

***1. Retaliation***

It is well established that prison officials may not retaliate against an inmate because that inmate exercised a right guaranteed to him under the constitution. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied*, 516 U.S. 1084, 116 S.Ct. 800, 133 L.Ed.2d 747 (1996). To state a claim of retaliation, a prisoner must allege facts which establish that (1) he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation.

Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997) (quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997); *McDonald v. Steward*, 132 F.3d 225 (5th Cir. 1998). "The inmate must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.1999). "The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995), *cert. denied sub nom Palermo v.*

*Woods*, 516 U.S. 1084(1996)).

In the course of this litigation, plaintiff has offered two theories to explain the alleged retaliation: first, plaintiff asserted that he was confined to lock-down because he refused to plead guilty to pending criminal charges; next, he complained that his continued confinement was the result of the complaint he filed in this court.

Thus, the complaints allege that plaintiff exercised specific constitutional rights – the right to trial and the right to access the courts. He has since abandoned the original claim that his July 14 – August 7, 2008, confinement to lock down occurred because of his refusal to plead guilty to pending charges.[3]

He still, however, maintains that his confinement on August 26th was in retaliation for filing the instant civil rights action. However, the complaints and exhibits fail to establish that the defendants had the intent to retaliate against him for his exercise of that right, nor do they provide an appropriate chain of causation from which retaliation might be inferred.

Causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997) (quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997); *McDonald v. Steward*, 132 F.3d 225 (5th Cir. 1998). "The inmate must allege more than his personal belief that he is the victim of retaliation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.1999).. "The inmate must produce direct evidence of motivation or, the more probable

---

[3] See Third Amended Complaint, rec. doc. 12, p. 1 – Plaintiff asserted that he was placed in lock down on July 14, 2008, for "... unsaid reasons... per order of Warden Chad Lee..." Other than his original complaint, plaintiff has not alleged that his initial confinement to lock down was an act of retaliation. Instead, he only argued that the act violated due process.

scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (quoting *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995), *cert. denied sub nom Palermo v. Woods*, 516 U.S. 1084(1996)).

Read liberally, plaintiff's complaints provide only conclusory allegations that his confinement to lock down was in any way related to the filing of the instant suit. As noted above, plaintiff signed his complaint on July 30, 2008, and that fact is confirmed by the original complaint. [rec. doc. 1, p. 4] Likewise, his in forma pauperis affidavit was executed on the same date [rec. doc. 2, p. 6]and therefore, prison authorities were on notice of plaintiff's complaint, at the earliest, on that date. Nevertheless, by his own admission, plaintiff was released from lock down on August 7, 2008. [rec. doc. 12, p. 1] He remained in K-Dorm from that date until August 26 when he was again confined in lock down. [*Id.*] During the period of time that he was confined in K Dorm, plaintiff had one conversation with Warden Lee. According to plaintiff, Lee inquired about the complaint and advised plaintiff that he had the authority to confine plaintiff to lock down for as long as was deemed necessary. [*Id.*] Thereafter, after the passage of 5 days, plaintiff was again confined to lock down. Plaintiff relies on these facts to support his retaliation claim; however, his reliance is misplaced. Plaintiff implies that the Warden's inquiry and statement prove retaliatory intent; however, a more logical interpretation suggests that Lee was merely providing his defense to plaintiff's allegation that he had previously been confined to lock down because of his refusal to enter a guilty plea to the pending felony charges.

Further, the chronology of events does not support plaintiff's claim. By his own admission, plaintiff's conversation with Warden Lee occurred on August 22nd; however, he was not confined in lock down again until August 26, 2008, four days later.

8

Finally, notwithstanding his assertion to the contrary, plaintiff was advised of the reasons for his confinement and transfers. He was accused of strong-arming his fellow inmates, and such a charge (even if ultimately proven untrue) justified segregating plaintiff from the general population. In other words, plaintiff cannot demonstrate that "but for" retaliatory motive, he would not have been confined. *Woods*, 60 F.3d at 1166.

For the same reason, his claim that his continued detention was an act of retaliation, fails. According to the pleadings, plaintiff remained in lock down under orders from Warden Lee, yet Warden Lee was not accused of any wrongdoing in plaintiff's grievance.

In other words, the pleadings do not establish any causative link between the filing of the instant complaint and plaintiff's detention in lock-down. Plaintiff has provided merely his "personal belief" that his confinement was an act of retaliation. Consequently, plaintiff's retaliation claim lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

### 2. Supervisory Defendants

Plaintiff has dismissed his claims against Assistant Warden Griffen. He should have also dismissed his claims against Sheriff Pylant. A review of the complaints and exhibits reveals no allegations of fault with respect to the Sheriff.

To the extent that plaintiff sued Sheriff Pylant in his supervisory capacity, such claims are subject to dismissal. As plaintiff was previously advised: "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443,

124 L.Ed.2d 660 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983). In other words, to the extent that plaintiff seeks to name Pylant as a defendant, he must allege facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by that supervisory defendant. He has failed to do so and therefore, his claims against Sheriff Pylant should be dismissed as frivolous.

*3. Conclusion and Recommendation*

Based upon the foregoing,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint alleging a claim of retaliation be **DENIED** and **DISMISSED WITH PREJUDICE** as frivolous pursuant to the provisions of 28 U.S.C. §§1915 and 1915A.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P.**

**6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, April 22, 2009.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE